IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Jay Easler, individually and as class representative of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| Hoechst Celanese Corporation, HNA Holdings, Inc., CNA Holdings, Inc., Hercules, Inc., Ashland, Inc., Hystron Fibers, Inc., Messer Greishiem, Inc., Arteva Specialties S.a.r.l. d/b/a "KoSo," Johns Manville Corporation, INVISTA S.a.r.l. d/b/a "Invista," Teijin Monofilament U.S., Inc., Teijin Holdings USA, Inc., Auriga Polymers Inc., Indorama Ventures USA, Inc., | |
| Defendants. | |

Civil Action No. 7:14-00048-TMC

**ORDER**

The plaintiff, Jay Easler ("Easler"), brought this suit against the above named defendants for violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, private nuisance, public nuisance, and negligence. Before the court are several motions to dismiss. (ECF Nos. 18, 20, 21, 22, 23, 24.) The parties have fully briefed these motions and the court does not see a need for oral argument. *See* Local Civil Rule 7.08, DSC. For the reasons that follow, the motions to dismiss are denied.[1]

**I. BACKGROUND**

Easler lives in a small community in South Carolina's upstate called Cannon's Campground. Cannon's Campground is located close to several water sources, including the

---

[1] This excludes Ashland, Inc.'s, motion to dismiss. In his omnibus response to the motions to dismiss, Easler stipulates to dismissing Ashland, Inc., as a defendant. (ECF No. 48, p. 26.) Accordingly, Ashland, Inc.'s, motion to dismiss (ECF No. 21) is now MOOT.

1

Pacolet River, Cherokee Creek, and what the parties refer to as "Polluted Creek," an unnamed tributary of the Pacolet River. Just north of Cannon's Campground is an industrial site that, according to the complaint, has been operational since 1966. Easler alleges that the defendants, Hoechst Celanese Corporation, HNA Holdings, Inc., and CNA Holdings, Inc. (collectively "Hoechst"); Hercules, Inc. ("Hercules"); Ashland, Inc. ("Ashland"); Hystron Fibers, Inc. ("Hystron"); Messer Greishiem, Inc.; Arteva Specialties S.a.r.l. d/b/a "KoSa" ("Arteva"); Johns Manville Corporation ("Johns Manville"); INVISTA S.a.r.l. d/b/a "Invista" ("Invista"); Teijin Monofilament U.S., Inc.; Teijin Holdings, USA, Inc.; Auriga Polymers Inc. ("Auriga"); and Indorama Ventures USA, Inc. ("Indorama"), are previous or current owners or operators of the site or are otherwise responsible for damages resulting from toxic waste entering surrounding surface waters and the groundwater.

Based on the defendants' alleged responsibility for the contamination, Easler has brought the following causes of action on behalf of himself and the Cannon's Campground community[2]: (1) RCRA injunctive relief under § 6972, specifically (a) cessation of all activities contributing to the contamination of the groundwater and surface water in the Cannon's Campground community, (b) commencement of a comprehensive and diligent program of delineation and remediation of existing contamination, and (c) institution of community medical monitoring; and (2) state causes of action for (a) public nuisance, (b) private nuisance, and (c) negligence.

The majority of the defendants have moved to dismiss Easler's complaint, raising various grounds.[3] Hoechst has moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) and South Carolina Rule of Civil Procedure 12(b)(6). (ECF No. 18.)

---

[2] Easler brings this case as a proposed class action. As a motion for class certification is not yet before the court, the court will reserve judgment as to the class allegations in the complaint.

[3] The docket reflects that Easler voluntarily dismissed Teijin Monofilament US, Inc., and Teijin Holdings USA, Inc., on January 27, 2014. (*See* ECF No. 6.) In addition, although both appear on Easler's list of defendants for service (ECF No. 4-1), the docket does not indicate that Hystron Fibers, Inc., or Messer Greishiem, Inc., has accepted service of the complaint or appeared in this case.

In its motion, Hoechst asserts that the court should dismiss (1) Easler's RCRA claims because (a) Easler has failed to properly plead imminent and substantial danger to health or the environment and (b) medical monitoring is not available as a remedy under RCRA and (2) Easler's state law claims because (a) Easler has not pled damages to or interference with his property and (b) those claims are barred by South Carolina's statute of limitations. Hoechst also raises a question as to Easler's standing to bring this suit and, specifically, whether he has suffered an injury in fact. Hercules, Invista, Arteva, Auriga, Indorama, and Johns Manville have joined in Hoechst's motion. (*See* ECF Nos. 20, 22, 23, 24.)

In addition to joining in Hoechst's motion, Hercules and Johns Manville have asserted independent grounds for dismissal. Both Hercules and Johns Manville contend that Easler has not alleged enough facts regarding their conduct or contribution to the alleged contamination to state claims under RCRA or state law. Johns Manville also asserts that Easler did not provide sufficient notice under 42 U.S.C. § 6972.

## II.  LEGAL STANDARD

Under the federal rules, each pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim should be dismissed when the complaint fails to allege facts upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, the rules require more than "labels and conclusions," "a formulaic

3

recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* at 678.

In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  And, for a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

A.    <u>Standing</u>[4]

Before addressing the adequacy of Easler's complaint, the court must first determine whether Easler has standing to bring this suit.  Article III of the Constitution restricts federal courts to the adjudication of cases and controversies.  The standing doctrine upholds this restriction by "ensur[ing] that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate."  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 287, 396 (4th Cir. 2011) ("*Gaston II*").  Thus, "[t]o meet the constitutional requirement for standing, a plaintiff must prove that: 1) he or she suffered an 'injury in fact' that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision."  *Id.*

---

[4] The court recognizes that the majority of cases cited in this section, if not all of them, were claims brought under the Clean Water Act's ("CWA") citizen suit provision, rather than under RCRA. However, like they have for the CWA's citizen suit provision, courts have interpreted the RCRA's provision for citizen enforcement to grant standing to the full extent allowed under Article III.  *See, e.g.*, *Maine People's Alliance and Natural Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 283 (1st Cir. 2006) ("Because there is nothing in RCRA's text or history that suggests a congressional intent to erect statutory standing barriers beyond those imposed by Article III of the Constitution . . . , we focus on what is essential to establish Article III standing.").  Thus, under either act, the court analyzes standing pursuant to Article III's requirements.

However, "[i]n the environmental litigation context, the standing requirements are not onerous." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003). Rather, "[i]f the plaintiff can show that his claim to relief is free from excessive abstraction, undue attenuation, and unbridled speculation, the Constitution places no further barriers between the plaintiff and adjudication of his rights." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000) ("*Gaston I*").

Here, the defendants have voiced concerns about Easler's assertion of an injury in fact. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Further, "[t]he Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III requirements." *Gaston I*, 204 F.3d at 160; *see e.g., Babbitt v. United Farm Workers Nat'l Unions*, 442 U.S. 289, 298 (1979) ("one does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending that is enough."); *Covington v. Jefferson Cnty.*, 358 F.3d 626, 638-39 (9th Cir. 2004) (landowners who lived across from county landfill satisfied Article III injury-in-fact requirement by showing the risks RCRA sought to minimize threatened their enjoyment of life and security of home if landfill not operated as required by RCRA). Thus, "[c]itizens may . . . rely on circumstantial evidence such as proximity to polluting sources, predictions of discharge influence, and past pollution to prove both injury in fact and traceability." *Id.* at 163.

That is exactly what Easler has done here. While Easler's property itself has not yet tested positive for contamination, the complaint painstakingly details exactly the type of

circumstantial evidence discussed in *Gaston I*. After describing the exact location of Easler's property in relation and proximity to the site, the complaint spends the next fifty-eight pages outlining the site's history of pollution, including the exact chemicals discharged and where those chemicals have been found in the surrounding area over the thirty-one years since the site has been operational. The clear presumption from the complaint's allegations is that over the years, the contamination from the site has migrated and continues to migrate toward Cannon's Campground and Easler's property. Further, the complaint alleges that the contamination has reached Polluted Creek, which directly abuts Easler's property, and that a monitoring well on land adjacent to Easler's tested positive for bedrock contamination. In addition, Easler alleges that, should the contamination reach his property, his well will be unusable and his property will diminish in value. In light of the circumstantial evidence presented, the court finds that Easler has shown an injury in fact fairly traceable to contamination from the site that could be redressed by granting the relief sought in this case.

B.     Statute of Limitations

In addition to challenging Easler's standing, the defendants assert that his state law claims are barred by South Carolina's three year statute of limitations for injuries to person or property. *See* S.C. Code Ann. § 15-3-350(3), (5). "[A] motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, a court may address a statute of limitations defense in a motion to dismiss "in the relatively rare circumstances where facts sufficient to rule on [the defense] are alleged in the complaint." *Id.* The defendants believe this is one of those rare occasions.

In support of this argument, the defendants point specifically to paragraph 108 of the complaint. That paragraph alleges, in its entirety:

> The residents of the Cannon's Campground community were unaware of any of the details discussed in this notice until November 16, 2010. On that date, WSPA-TV reporter Chris Cato—an employee of the Spartanburg, South Carolina CBS affiliate—began airing a series of reports entitled "Shadow of Sickness" related to cancer rates in the community and the possible relation to pollution emanating from the Site. "Shadow of Sickness" was a five-part series that aired intermittently through May of 2011.

(Compl., ECF No. 1, p. 50, ¶ 108.) Thus, according to the defendants, if the residents of Cannons Campground, including Easler, became aware of the potential violations discussed in the complaint on November 6, 2010, then they had until November 6, 2013, to file a complaint and this complaint was not filed until January 7, 2014.

However, the court does not agree that the complaint presents all of the facts necessary to decide the defendants' statute of limitations defense. For instance, the complaint does not describe the content of each part of the series. And, the description it does give—that the series addressed cancer rates in the community—shows that the report did not directly relate to the claims at issue in this case. The complaint also does not state when or if Easler viewed the series or if the series should have informed him that pollution potentially threatened his property. In sum, despite defendants' assertion, stating that the "residents of the Cannon's Campground community were unaware of *any* of the details" in the complaint until November 16, 2010, is not equivalent to stating that on November 16, 2010, the residents of Cannon's Campground became aware of enough details alleged in the complaint to trigger the statute of limitations. Accordingly, the court will not address the potential statute of limitations issue at this juncture.

C.     RCRA Claims

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). RCRA's primary purpose is to "reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)). To help further that purpose, RCRA contains a citizen suit provision, which provides that "any person may commence a civil action on his own behalf . . . against any person . . . , including any past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed to or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

The defendants raise two primary challenges to Easler's claims under RCRA: (1) that he has not properly pled an imminent and substantial danger to health or the environment and (2) that his claim for medical monitoring is not an available remedy under the RCRA.

1.     *Imminent and Substantial Danger to Health or the Environment*

The majority of courts that have addressed RCRA's imminent and substantial endangerment language have found that it creates a broad standard, "which is intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate *any risk* posed by toxic wastes." *Dague v. City of Bulington*, 935 F.2d 1343, 1355 (2d Cir. 1991) (emphasis in original); *see also Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 210 (2d Cir. 2009) ("We have indicated that the 'imminent and substantial endangerment'

8

standard is a broad one."); *Mallinckrodt*, 471 F.3d at 288 (noting that "at least four of our sister circuits have construed [§ 6972(a)(1)(B)] expansively" and that "all four courts have emphasized the preeminence of the word 'may' in defining the degree of risk needed to support [§ 6972(a)(1)(B)'s] liability standard"). However, the plain language of the act still requires a plaintiff to show an "imminent" and "substantial" "endangerment."

In its motion to dismiss, Hoechst collapses its standing argument into its assertion that Easler has not properly pled an imminent and substantial danger to health or the environment. Specifically, Hoechst avers that because Easler does not allege an injury in fact, he "does not have standing to assert a claim for imminent and substantial danger." (Hoechst Mot. to Dismiss, ECF No. 18-1, p. 10.)

The court agrees that Article III's injury in fact requirement and RCRA's imminent and substantial danger standard rely on almost identical considerations. Much like an injury in fact for environmental plaintiffs, "a finding that an activity may present an imminent and substantial harm does not require actual harm." *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) (citing *United States v. Waste Indus., Inc.*, 734 F.2d 159 (4th Cir. 1984)). Rather, "[t]he RCRA provision implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later. Also, endangerment must be substantial and serious, and there must be some necessity for the action." *Id.* (emphasis in original).

Thus, as the court has already found that the complaint sufficiently pleads a present threat of a serious harm to Easler and his property for standing purposes, it also finds that the complaint has presented sufficient evidence of an imminent and substantial danger to health or the environment to state a claim under RCRA.

### 2. *Medical Monitoring*

In addition, the defendants contend that Easler's claim for medical monitoring must fail because medical monitoring is not a recognized remedy under RCRA. Easler pleads his request for medical monitoring as a cause of action under RCRA for injunctive relief. Specifically, the complaint states: "Because of the long term exposure of the members of the community to numerous hazardous materials due to the actions of the defendants, it is necessary for the Court to establish a court-administered community medical monitoring program through which members of the proposed class may receive periodic health screening for illnesses caused by the hazardous materials identified within this complaint." (Compl., ECF No. 1, p. 86, ¶ 192.) The defendants contend that this cause of action is really a claim for future damages wrapped in equitable relief's clothing. The question for this court, then, is whether medical monitoring is the type of remedial injunctive relief RCRA envisions.[5] After a review of relevant statutory and case law, the court concludes that, like many in law, it depends.

The RCRA authorizes a court to "restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), [or] to order such person to take such other action as may be necessary." 42 U.S.C. § 6972(a). Thus, "a private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, *i.e.*, one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, *i.e.*, one that 'restrains' a responsible party from further violating RCRA." *Meghrig*, 516 U.S. at 485.

---

[5] The court notes that if Easler intended to plead medical monitoring as a state law claim, this claim would fail because South Carolina has yet to recognize a cause of action for medical monitoring. *See Rosmer v. Pfizer, Inc.*, No. CIV. A. 9:99-2280-18RB, 2001 WL 34010613, *5 (D.S.C. March 30, 2001).

10

A number of courts have considered the appropriateness of ordering defendants to implement or support some sort of medical monitoring program in response to a release of environmental contaminants potentially harmful to human health. As the defendants note, the most relevant case here is *Werlein v. United States*, 746 F. Supp. 887 (D. Minn. 1990), *vacated in part on other grounds*, *Werlein v. United States*, 793 F. Supp. 898 (D. Minn. 1992). In *Werlein*, like here, the plaintiffs requested medical monitoring as a form of injunctive relief under RCRA. The proposed program required the defendants to pay a lump sum of cash into a fund, and that persons eligible for medical monitoring use that pot of cash to obtain reimbursement costs incurred as the result of medical screening examinations. The court made short work of the plaintiffs' claim, finding that "[p]ayment of cash by one party to reimburse other parties for costs incurred is not injunctive relief." *Id.* at 895.

In *Werlein*, the court also carefully distinguished the plaintiffs' proposed medical monitoring fund from one approved by the Northern District of California in *Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193 (N.D. Cal. 1987). In the court's view, the two funds differed in their purpose and degree of necessity. *Barth* involved a group of plaintiffs exposed to benzene, a toxin about which not much was known at the time the case was filed, and the proposed fund "would provide for a Medical Monitoring Program which will gather and forward to treating physicians information relating to the diagnosis and treatment of diseases which may result from the plaintiff's exposure to toxins." *Barth*, 661 F. Supp. at 203. In response to the plaintiffs' reliance on *Barth*, the court in *Werlein* conceded that "[i]n a case where a number of persons are exposed to a toxin about which little is known, and it is necessary to gather and share information regarding diagnosis and treatment through screening, the Court would consider framing a medical monitoring and information sharing program as injunctive relief." *Werlein*,

11

746 F. Supp. at 895. But, because the consequences of exposure to the toxin at issue in *Werlein* were well-documented, the court reasoned that the proposed fund would merely screen for early signs of those consequences, and thus could not be authorized as injunctive relief under RCRA. *Id.*

After reviewing these cases and others, the Western District of New York concluded that "[a] court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff's health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than 'predominantly money damages.'" *Gibbs v. E.I. DuPont de Nemours & Co., Inc.*, 876 F. Supp. 475, 481 (W.D.N.Y. 1995).

The court finds that this view comports with RCRA's purpose and its grant of expansive equitable authority to the courts to carry out that purpose. *See U.S. v. Waste Indus., Inc.*, 734 F.2d 159, 163-66 (4th Cir. 1984); *U.S. v. Price*, 688 F.2d 204, 210-12 (3rd Cir. 1982). However, in this order, the court finds only that Easler's claim for medical monitoring is not subject to summary dismissal. The court offers no opinion at this point in the litigation as to whether it will withstand future scrutiny or prove an appropriate remedy on the facts presented in the case of RCRA liability.[6]

D.     State Law Claims

In addition to his RCRA claims, Easler has brought three state law causes of action: (1) public nuisance, (2) private nuisance, and (3) negligence. The defendants move to dismiss all

---

[6] In addition, the defendants assert that the Fourth Circuit has already resolved this issue by stating that "[a] claim for medical surveillance costs is simply a claim for future damages." *Ball v. Joy Techs., Inc*., 958 F.2d 36, 39 (4th Cir. 1991). Much like the program proposed in *Werlein*, the medical surveillance in *Ball* would have required the defendants to cover the costs of periodic medical examinations designed to monitor the plaintiffs' health and facilitate early detection of disease caused by the plaintiffs' exposure to toxic chemicals. However, the primary question before the Fourth Circuit in *Ball* was whether, under West Virginia or Virginia common law, the plaintiffs could recover the reasonable value of future medical expenses where they failed to show any present, physical injury. Thus, the court does not find that *Ball* is dispositive of the relevant question in this case—whether medical monitoring can be a proper form of injunctive relief.

three causes of action because Easler has failed to allege any damage to or interference with his property.

"A nuisance is 'anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property.'" *Strong v. Winn-Dixie Stores, Inc.*, 125 S.E.2d 628, 632 (S.C. 1962) (quoting *State v. Columbia Water Power Co.*, 63 S.E. 884, 889 (S.C. 1909)). In addition, "[a] private person may bring a private civil suit for a public nuisance only if he suffered a special injury to his real or personal property." *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 753 S.E. 2d 846, 852 (S.C. 2014). "A special injury is 'individual or specific damage in addition to that suffered by the public' and must be 'of a special character, distinct and different from the injuries suffered by the public generally.'" *Id.* (internal citations omitted). And, to state a viable clam for negligence, a landowner must plead some damage to his property. *See Ravan v. Greenville Cnty.*, 434 S.E.2d 296, 307 (S.C. Ct. App. 1993).

"A well-known principle of property law is that property consists of a bundle of rights." *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 474-75 (S.C. 2013). For owners of land abutting a body of water, that bundle of rights includes a "special right[]," "distinct from those rights that may be enjoyed by the public at large," to make reasonable use of the water surrounding their property. *White's Mill Colony Inc. v. Williams*, 609 S.E.2d 811, 817 (S.C. Ct. App. 2005). Further, a landowner's interest in use and enjoyment of his property includes an interest in being free "from discomfort and annoyance while using [his] lands." *Babb*, 747 S.E.2d at 473 (quoting Restatement (Second) of Torts § 821D (1979)). Damage to or interference with any of these rights may constitute tort damages under a nuisance or negligence theory.

The defendants assert that Easler has not successfully pled interference with his property rights because his complaint does not state specifically that he uses the stream next to or the groundwater under his property. In addition, relying on one sentence in one Fourth Circuit opinion, the defendants assert that Easler's state law claims cannot survive because he has not identified enough contamination on his property to rise to the level of toxicological concern. And, without any of these additional bases, the defendants claim Easler cannot rely on alleged diminution of property value.

The court finds these arguments unavailing, especially at the motion to dismiss stage. In deciding this motion, the court is tasked with evaluating the plausibility of Easler's claims, not their precise factual nature, and must construe the allegations and all reasonable inferences therefrom in a light favorable to Easler. With this in mind, the court finds that Easler has sufficiently pled that the surface and ground water next to and possibly under his property is sufficiently contaminated to plausibly interfere with his property rights.

In addition, the court does not find *In re Wildewood Litig.*, 52 F.3d 499 (4th Cir. 1995), either controlling or persuasive at this point in the litigation. The court decided *In re Wildewood*, after a motion for summary judgment and the presentation of expert testimony on contamination and diminution of property value. As nuisance and negligence claims are both fact-intensive inquiries, the court is not convinced to discard these claims based on the somewhat similar facts of another case without further factual development of the record in this matter.

E.    Hercules

In addition to joining in Hoechst's motion to dismiss, Hercules has moved separately for the court to dismiss all claims against it. Hercules asserts that Easler's RCRA claims fail as to Hercules because the complaint does not allege that Hercules has contributed to waste disposal

14

on the site. Further, because the complaint does not allege wrongful conduct by Hercules, Easler's state law claims must fail. And, in particular, Easler's nuisance claims fail because the complaint does not allege that Hercules had control of the property at the time the alleged nuisance was created. In addition, Hercules contends that it cannot be subject to a mandatory injunction to cease activities or conduct remediation on a property it has not had any relation to in forty years.

According to the complaint, on September 30, 1965, Hercules sought permission to dispose of industrial wastewater from the site into the Pacolet River. Then, in 1966, Hercules constructed a dimethyl terephthalate ("DMT") production facility on the southeastern part of the property. On May 22, 1970, Hercules sold a portion of the site to Hystron Fibers, Inc. Sometime thereafter, but in the "early 1970s," American Hoechst Corporation purchased the site and constructed a fiber production area. In 1978, American Hoechst Corporation ceased all on-site DMT production and partially dismantled the DMT facility. On November 13, 2008, Ashland, Inc., acquired Hercules. Those are the only allegations in the complaint directly pertaining to Hercules.

Thus, Hercules asserts that the complaint does not specify the when, where, what, or how of Hercules's contribution to hazardous waste at the site. The court disagrees. While the complaint does not contain additional allegations regarding Hercules itself, it does clearly allege that a portion of the contamination stemmed from Hercules's DMT plant, even after it was deactivated and partially disassembled. The court finds that these allegations are enough to sustain Easler's claims against Hercules at the motion to dismiss stage. In addition, having found that Easler has sufficiently pled that Hercules may have contributed to the disposal of waste at the site, the court finds that, if proven, the court would have authority under RCRA to

15

enjoin Hercules in some way. The exact parameters or necessity of that injunction are not properly before the court at this time.

F.      Johns Manville

Like Hercules, Johns Manville moves to dismiss Easler's claims against it on the grounds that the complaint does not tie any of Johns Manville's alleged conduct to any of the alleged wrongs. In addition, Johns Manville asserts that Easler is barred from bringing RCRA claims against it because he failed to provide sufficient notice under 42 U.S.C. § 6972 and 40 C.F.R. § 254.3.

With regard to Johns Manville, the complaint alleges that: (1) "[d]uring or about 2000, KoSa sold a portion of the Site to Johns Manville Corporation" and (2) "Johns Manville discharges wastewater into the Site's wastewater treatment plant to the present day." (Compl., ECF No. 1, ¶ 12.) In addition, while the complaint acknowledges that the site is subject to an NPDES permit and DHEC regulation, it also alleges multiple violations of the NPDES permit. In particular, the complaint alleges at least one violation resulting directly from the wastewater treatment facility only three years after Johns Manville allegedly acquired a portion of the site from KoSa and began discharging its wastewater there. (*See* ECF No. 1, ¶¶ 89-90.) The court finds that the complaint alleges sufficient facts on which to base Easler's RCRA and state law claims against Johns Manville.

Likewise, the court finds that Easler's pre-suit notice satisfied the relevant statutory and regulatory conditions. Pursuant to 40 C.F.R. § 254.3, the notice

> shall include sufficient information to permit the recipient to identify . . . the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

16

40 C.F.R. § 254.3(a).  Here, Easler's pre-suit notice, just like the complaint, alleged that Johns Manville owned a portion of the property and discharged wastewater there.  Thus, it clearly alleged the conduct constituting the claimed violation.  In addition, the notice alleges that the identified alleged conduct has taken place from 2000 to the present.  And, although the notice did not attempt to connect each defendant to each contaminant, it did include a list of the contaminants on which Easler intended to base his suit.  The court concludes that Easler's notice included sufficient information regarding the basis for his intent to sue Johns Manville.

## IV.  CONCLUSION

For the forgoing reasons, the defendants' motions to dismiss (ECF Nos. 18, 20, 21, 22, 23, 24) are DENIED.

**IT IS SO ORDERED**.

s/Timothy M. Cain<br>United States District Judge

August 5, 2014  
Anderson, South Carolina